# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------X

UNION CAPITAL, LLC,               :    Case No.: 1:21-cv-01741-LDH-PK

           Plaintiff,        :

     - against -          :

SULTAN CAPITAL GROUP, LLC, a New York  :   **FIRST AMENDED COMPLAINT**
corporation, and GUY SULTAN,     :

           Defendant.    :

------------------------------------------X

Plaintiff, Union Capital, LLC ("Union" or "plaintiff"), by its undersigned attorneys, for its complaint, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1.    This is an action for fraudulent inducement, breach of contract and a breach of a personal guarantee in connection with agreements whereby plaintiff agreed to purchase from defendant Sultan Capital Group, LLC, ("SCG") certain quantities of medical gloves for a total purchase price of $543,500.00. Although, Plaintiff pre-paid the entire purchase price with the expectation that the product would be fully and timely delivered, SCG failed to deliver any of the product purchased by plaintiff. Worst still, Sultan was aware that there were no gloves for sale, and yet, falsely claimed to plaintiff that its nonexistent gloves were en route in order to induce Plaintiff into entering into a second agreement and sending two additional wires—and continued to affirmatively lie about the existence of the gloves—including offering various excuses for the delay—until finally admitting several weeks later that there were no gloves and that they had simply kept Plaintiff's money.

2.    As a result, plaintiff demanded the return of all monies that he been pre-paid to SCG. In connection therewith, SCG's president, Guy Sultan ("Sultan"), promised full and immediate

repayment and personally guaranteed that he would accept full personal liability in the event that the monies were not returned by SCG.  To date, both SCG and Sultan have failed and refused to return any portion of those monies to plaintiff.

3.     Accordingly, plaintiff brings this action seeking damages in the sum of $543,500.00 plus interest against defendants, jointly and severally, and full reimbursement of its reasonable attorneys' fees and costs.

**PARTIES**

4.     Plaintiff Union Capital, LLC ("Union" or "plaintiff") is a limited liability company that maintains a place of business located at 390 Whalley Avenue, New Haven, Connecticut 06511.

5.     The members of Union are Chaim A. Vail and Yakov Borenstein, each of whom reside in the State of Connecticut.

6.      For purposes of diversity, Union is a citizen of the State of Connecticut.

7.     Upon information and belief, defendant Sultan Capital Group, LLC ("SCG") is a limited liability company duly organized and existing under the laws of the State of New York and maintains a place of business at 2370 Royce Street, Brooklyn, New York 11234.

8.     Upon information and belief, defendant Guy Sultan ("Sultan") is an individual who is a citizen and resident of the State of New York, County of Kings.

9.     Upon information and belief, Sultan the sole member of and the president of SCG.

10.    Upon information and belief, each member of SCG is a citizen and resident of the State of New York.

11.    No member of Union is a citizen or resident of the State of New York.

12.    There is, therefore, complete diversity of citizenship.

2

**JURISDICTION AND VENUE**

13.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

14.     This Court has supplemental jurisdiction of plaintiff's state law claims pursuant to 28 U.S.C. Section 1367(a).

15.     Venue is proper in this District pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, in which at least one member of defendant resides, or in which a substantial part of the property which is subject to this action is situated.

**FACT COMMON TO ALL CLAIMS FOR RELIEF**

**The First Transaction**

16.     On or about December 22, 2020, after arm's-length negotiations, Union agreed to purchase from SCG a total of 3,000 Skymed nitrile examination gloves in various sizes and in the color blue for a total purchase price of $319,500.00.

17.     An invoice dated December 22, 2020 (Invoice No. 1078) setting forth this agreement of purchase and sale was contemporaneously issued by SCG to Union and called for immediate full payment (the "First Invoice").

18.     Plaintiff fully and timely made that payment.

19.     In connection with this transaction, SCG prepared a letter agreement dated December 22, 2020 to be signed by all parties.

20.     The letter agreement set forth the conditions of the transaction.

3

21.     Among other things, this letter provided that once the shipment left the port of origin (required to have been 3 to 5 business days from receipt of wire payment by Union), shipment to SCG's New Jersey facility was to be made within forty (40) days and that, upon the delivery of the shipment to SCG's New Jersey facility, Union would have seven (7) days to inspect the product and to seek a refund if there were any issues, the nature of which were listed in the letter.

22.     According to this letter agreement, "Sultan Capital Group and Guy Sultan will take full responsibility for delivery and funds paid" upon the happening of any of the listed issues.

23.     The letter agreement that accompanied the First Invoice was signed by Sultan and by Chaim Vail on behalf of Union.

**Defendant Guy Sultan's Fraudulent Scheme**

24.     On January 6, 2021, Sultan instructed the delivery company contracted to transport the containers shipping the equipment purchased by Plaintiff to cancel the shipment.

25.     Sultan purposely concealed the fact that the he had cancelled the shipment.

26.     Instead of informing Plaintiff that Defendants cancelled the shipment, Sultan made repeatedly false statements, claiming to Plaintiff that the shipment was being delivered.

23.

27.     On January 7, 2021, Plaintiff asked Sultan for tracking information of the shipment. Sultan responded to Plaintiff's inquiry that he will have his office forward the information to him because he "know[s] how busy [Plaintiff is] during the day." Mr. Sultan also informed Plaintiff that he instructed his office to "forward over the container numbers." These statements were false, and knowingly false when made. There were no container numbers to forward, because, unbeknownst to Plaintiff, Sultan had already cancelled the shipment.

28.     Naturally, neither Sultan nor SCG forwarded container numbers to Plaintiff despite their promise to so, because Sultan could not forward container numbers given that the order was already cancelled.

29.     Plaintiff informed Sultan of its reservations regarding SCG's conduct. Plaintiff communicated to Sultan that "this is starting to make me nervous …. You keep telling me over and over again that you will send it. I don't think I'm asking for a lot here. Please take 2 min out of your precious time to forward me the container number."

30.     Rather than admit to Plaintiff that Defendants had cancelled the shipment, Sultan falsely informed Plaintiff that the containers—that did not exist— "got picked up and we know it's on a board and will arrive".

24.     **The Second Transaction**

31.     As a result of Sultan and SCG's false assurances and failure to disclose that the first shipment was cancelled and that Sultan was retaining funds wired by Plaintiff, Sultan and SCG induced Plaintiff to enter into a second agreement.

32.     Prior to and during negotiations, Sultan continued to actively and falsely represent to Plaintiff that the goods were on the way, knowing that there were no goods.

33.     Sultan's deception was done for the sole purpose of inducing Plaintiff to enter into a second agreement and for Plaintiff to send Defendant's monies for goods that did not exist.

25.34.  On or about January 15, 2021, after arm's-length negotiations, Union agreed to purchase from SCG an additional 3,000 Skymed nitrile examination gloves in various sizes and in the color blue for a total purchase price of $319,500.00.

5

26.35.  An invoice dated January 15, 2021 (Invoice No. 1087) setting forth this agreement of purchase and sale was contemporaneously issued by SCG and called for immediate full payment (the "Second Invoice").

27.36.  Plaintiff provided SCG with a deposit in the sum of $95,850.00 and then wired the balance of $223,650.00.

28.37.  Thus, the Second Invoice was fully and timely paid.

29.38.  According to the Second Invoice, the "departure date" of the shipment was to be January 20, 2021.

30.39.  In connection with this transaction, SCG prepared a letter agreement January 15, 2021 to be signed by all parties that set forth the conditions of the transaction.

31.40.  The contents of this letter were identical to the contents of the December 21, 2020 letter that accompanied the Second Invoice.

41.    The letter agreement that accompanied the Second Invoice was signed by Sultan and by Chaim Vail on behalf of Union.

32.

**SCG's Default**

33.    Based on the conditions set forth in the December 22, 2020 letter agreement, the entire shipment was required to arrive at SCG's New Jersey facility not later than February 5, 2021, at which time plaintiff would have had an opportunity to inspect the gloves that had been shipped.

42.

34.   Based on the same conditions set forth in the January 15, 2021 letter agreement, the entire shipment was required to arrive at SCG's New Jersey facility not later than March 1, 2021, at which time plaintiff would have had an opportunity to inspect the gloves that had been shipped.

43.

44.   Neither shipment was timely made or was ever made. Throughout this period Defendants were completely aware of the fact that they could not and would not deliver a single shipment of goods to Plaintiff.

45.   Plaintiff continued to request that Sultan provide information on the shipping containers transporting gloves purchased by and through the Second Invoice.

46.   Unbeknownst to Plaintiff, Plaintiff's requests were entirely in vain as Defendants had no intention of informing Plaintiff of their deception.

47.   On February 22, 2021 Sultan falsely told Plaintiff that the items were delivered and that they were being unloaded and palleted. Of course, this was utterly false.

48.   On February 24, 2021, Plaintiff attempted to contact Sultan to receive an update regarding the delivery of the containers. When Plaintiff could not reach Sultan, Plaintiff told Sultan that "it is not like [Sultan] to not be communicative. Please tell me there is an explanation to this. This has now changed from concern to alarm."

49.   Defendants did not make any effort to tell Plaintiff the truth that Defendants had cancelled the first shipment and that Defendants did not have, and never had, any goods to deliver to Plaintiff.

50.   On February 24, 2021, Sultan lied to Plaintiff that "we're dealing with an issue, we came with a conclusion if this can't be fixed within 48 hours we are going to refund dunds that

we're sent to us including a Penalty of 10k per 100 cases order. That's we're I stand . It's in my best interested to get the containers to you but where dealing with a issue at this point."

51.    Also on February 24, 2021, Sultan continued his fraudulent ruse, telling Plaintiff that the containers were not picked up and that customs told him there might be an issue with stock since the vendor that sold to him was not authorized. Sultan claimed that the stock was fake.

52.    On February 24, 2021, Sultan maintained his charade by claiming that the gloves were not being released and requested that Plaintiff send him the wire information to return funds. Sultan told Plaintiff that he filed a complaint with the FBI.

53.    On February 25, 2021, Sultan lied to Plaintiff that "Funds will be return by March or before the 17th. Maybe sooner."

54.    Therefore, tTo date, none of the products purchased by plaintiff from SCG for a total purchase price of $639,000.00 has been delivered.

55.    Despite repeated requests by Plaintiff, SCG did not refund any of the monies to Plaintiff on or before March 17, 2021 as promised.

35.

**Sultan's Personal Guarantee**

36.56.  As a result of SCG's failure to deliver the products purchased and paid for by plaintiff, plaintiff contacted SCG and demanded a full refund.

37.57.  On or about March 25, 2021, Sultan, on behalf of SCG, agreed in writing that SCG would immediately and fully refund the entire $639,000.00 that had been pre-paid by plaintiff.

38.58.  Furthermore, Sultan confirmed in writing his personal guarantee of such payment such that he communicated to plaintiff that he accepted personal liability to return all monies to plaintiff in the event that those monies were not returned by SCG.

39.59.  Notwithstanding Sultan's promise and guarantee, neither SCG nor Sultan has paid any portion of these monies back to plaintiff.

**FIRST CAUSE OF ACTION**
**(Breach of Contract – Against Sultan Capital Group, LLC)**

40.60.  Union repeats, realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

41.61.  By virtue of the above-referenced agreements plaintiff and SCG, valid, binding and enforceable contracts were created.

42.62.  Such contracts were breached by SCG by virtue of its failure and refusal to, *inter alia*, deliver to plaintiff the Skymed nitrile examination gloves purchased by plaintiff and to return to plaintiff any portion of the monies prepaid by plaintiff in connection with its purchase of those gloves.

43.63.  Plaintiff timely and fully performed all of its obligations under these contracts that were its obligation to perform except for those obligations that it could not perform because of SCG's breaches herein.

44.64.  To date, SCG still has failed to perform any of its obligations under its contract(s) with plaintiff.

45.65.  As a result, plaintiff has suffered damages.

46.66.  Union is therefore entitled to a judgment in its favor and against SCG in an amount to be determined at trial, but in all events is not less than $639,000.00, plus interest.

9

**SECOND CAUSE OF ACTION**
**(Breach of Guarantee – Against Guy Sultan)**

47.67.  Union repeats, realleges and incorporates by reference each and every allegation

contained in all preceding paragraphs of this Complaint as if fully set forth herein.

48.68.  As set forth previously herein, after SCG failed timely to deliver the product

purchased by plaintiff from SCG (or to deliver such product at all), Sultan promised that SCG

would immediately return to plaintiff the entirety of the $639,000.00 that had been prepaid to

SCG by plaintiff.

49.69.  Additionally, in order to reassure plaintiff, Sultan personally guaranteed such

payment and agreed in writing to accept full personal liability for the return of such monies to

plaintiff.

50.70.  As such, Sultan agreed that he would pay back the monies owed by SCG to

plaintiff if SCG failed to make any portion of that payment.

51.71.  SCG did not pay any portion of the $639,000.00 that it was required to and had

promised to repay to plaintiff.

52.72.  Despite his personal guarantee, and due and proper demand by plaintiff, Sultan

has failed and refused to deliver to plaintiff any portion of the $639,000.00 obligation owed by

SCG.

53.73.  Sultan, therefore, is in default and in breach of his personal guarantee.

74.____Union is therefore entitled to a judgment in its favor and against Sultan, jointly

and severally, in an amount to be determined at trial, but in all events is not less than

$639,000.00, plus interest.

**THIRD CAUSE OF ACTION**
**(Fraudulent Inducement – Against Guy Sultan)**

75.     Union repeats, realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

76.     Sultan made misrepresentations of material facts to Plaintiff as set forth above, including, without limitation, falsely misrepresenting to Plaintiff that Defendants would deliver gloves purchased by Plaintiff as set forth in the First Invoice and Second Invoice.

77.     On January 6, 2021, Sultan instructed the delivery company contracted to transport the materials purchased by Plaintiff to cancel the shipment.

78.     Sultan did not disclose to Plaintiff that he cancelled the shipment of gloves on January 6, 2021.

79.     Sultan did not inform Plaintiff that he was retaining the funds wired by Plaintiff to SCG.

80.     Sultan was aware since January, 2021 that he had cancelled the shipment of goods previously purchased by Plaintiff.

81.     Plaintiff repeatedly requested that Sultan forward the container number information.

82.     Sultan continued to falsely claim that the shipment was being delivered knowing full well that they had cancelled the order.

83.     Sultan affirmatively lied to Plaintiff, claiming that he knows the containers purchased by Plaintiff "got picked up and we know it's on a board and will arrive".

84.     As a result of Sultan's failure to disclose that the first shipment was cancelled, and affirmative misrepresentations that it had goods to sell, and that the original goods were en route, Sultan induced Plaintiff to enter into a second agreement for the purchase of gloves.

11

85.     Sultan's purpose in concealing the fact they had cancelled the shipment and that that it actually had no goods to sell, was for the sole purpose of inducing Plaintiff to send money for goods that did not exist.

86.     Sultan knew that they would not deliver a second shipment of goods to Plaintiff and that it had no goods to sell.

87.     Nevertheless, on or about January 15, 2021, after arm's-length negotiations, Sultan induced Union to purchase from SCG an additional 3,000 Skymed nitrile examination gloves in various sizes and in the color blue for a total purchase price of $319,500.00—despite Sultan knowledge that it did not have, and would not be sending, any such goods.

88.     Neither the first nor second shipment was timely made or was ever made.

89.     On February 22, 2021 Sultan continued his charade, and claimed to lied toto Plaintiff that the items were delivered and that the items were being unloaded and palleted.

90.     On February 24, 2021, Plaintiff attempted to contact Sultan to receive an update regarding the delivery of the containers. When Plaintiff could not reach Sultan, Plaintiff told Sultan that "it is not like [Sultan] to not be communicative. Please tell me there is an explanation to this. This has now changed from concern to alarm."

91.     Sultan concealed the fact that they had cancelled the first shipment and that Sultan did not have, and never had, any goods to deliver to Plaintiff.

92.     On February 24, 2021, Sultan lied to Plaintiff that "we're dealing with an issue, we came with a conclusion if this can't be fixed within 48 hours we are going to refund dunds that we're sent to us including a Penalty of 10k per 100 cases order. That's we're I stand . It's in my best interested to get the containers to you but where dealing with a issue at this point."

93.     Also on February 24, 2021, Sultan continued his fraudulent ruse, telling Plaintiff that the containers were not picked up and that customs told him there might be an issue with stock since the vendor that sold to him was not authorized. Sultan claimed that the stock was fake.

94.     On February 24, 2021, Sultan maintained his charade by claiming that the gloves were not being released and requested that Plaintiff send him the wire information to return funds. Sultan told Plaintiff that he filed a complaint with the FBI. In fact, Sultan had filed a complaint with the FBI in early January, prior to entering into the Second Transaction—when Sultan was- already aware that it had no goods to sell—but failed to inform Plaintiff of this fact.

95.     On February 25, 2021, Sultan told Plaintiff that "Funds will be return by March or before the 17th. Maybe sooner."

96.     Despite repeated requests by Plaintiff, Sultan did not refund the monies to Plaintiff on or before March 17, 2021 as promised.

97.     No shipment of goods purchased pursuant to the first agreement or the second agreement was ever made.

98.     To date, none of the products purchased by plaintiff for a total purchase price of $639,000.00 has been delivered.

99.     To date, Sultan has not returned any of the monies wired by Plaintiff to Sultan.

100.    Sultan actively and falsely represented that the goods were on the way, knowing that there were no goods, in order to induce Plaintiff to send Sultan money for goods that did not exist.

101.    As the result of the false statements made by Sultan that the first shipment was being delivered, and by not informing Plaintiff that Defendants had cancelled the shipment,

13

Defendants induced Plaintiff to enter into the Second Agreement.

102.   But for Sultan's statements, Plaintiff would not have entered into the Second Agreement and induced Plaintiff to send two additional wires.

103.   Sultan knew his misrepresentations to be false when made, and, upon information and belief, had no intention to deliver the gloves purchased to Plaintiff or refund any of the monies wired by Plaintiff.

104.   Sultan made these misrepresentations with the intent to induce Plaintiff's reliance, and to induce Plaintiff into enter into a second agreement.

105.   Plaintiff's reliance upon these misrepresentations was reasonable and justifiable. Sultan claimed to be a reputable business person with a long history of selling these kind of products.  Among other things, Sultan was in a superior position of knowledge, and was the only one who would know if these representations were true.

106.   Sultan did not provide Plaintiff with any information regarding Sultan's cancellation of the first shipment, despite repeated requests by Plaintiff.

107.   But for Sultan's wrongful acts and misrepresentations, Plaintiff would not have entered into the second agreement and would not have sent the last two wires.

108.   Sultan is therefore liable for all resulting harm caused to plaintiff.

109.   Accordingly, judgment should be rendered against Sultan in an amount to be determined at trial, but in any event no less than $639,000.00, plus interest.

110.   Sultan's conduct was malicious and shocking to the conscience.  Therefore, Sultan should also be held liable for punitive damages to prevent them and others similarly inclined from repeating such tortuous conduct in the future, in the sum of at least $1 million, the precise amount to be determined at trial.

14

54.

**CLAIM FOR RELIEF**

**WHEREFORE**, plaintiff Union Capital, LLC seeks judgment against defendants, jointly and severally, as follows:

  i.  On the First Cause of Action, awarding it damages against defendant Sultan Capital Group, LLC in an amount not less than $639,000.00, plus consequential damages, prejudgment interest and costs;

  ii.  On the Second Cause of Action, awarding it damages against defendant Guy Sultan in an amount not less than $639,000.00 consequential damages, prejudgment interest and costsplus interest; and

  iii.  On the Third Cause of Action, awarding it damages against Guy Sultan in an amount not less than $639,000.00 plus prejudgment interest plus punitive damages in an amount to be determined by the Court; and

ii.

  iii.iv.  Awarding plaintiff all of its costs and expenses incurred in this action, including, but not limited to, its reasonable legal fees;

  iv.v.  Granting such other and further relief as the Court may deem just, proper and in the interest of justice.

Plaintiff demands a trial by jury.

Dated: New York, New York
   March 30, 2021 February 10, 2022

      LAW OFFICE OF JEFFREY FLEISCHMANN PC

      By: /s/Jeffrey Fleischmann
        Jeffrey Fleischmann, Esq.

*Attorneys for Plaintiff Union Capital, LLC*

150 Broadway, Suite 900
New York, New York  10038
Tel. (646) 657-9623
Fax (646) 351-0694
jf@lawjf.com