UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNION CAPITAL, LLC,

                Plaintiff,

-against-

SULTAN CAPITAL GROUP, LLC and GUY
SULTAN,

                Defendants.
------------------------------------------------------------ x

**MEMORANDUM DECISION AND ORDER**

**AND**

**REPORT AND RECOMMENDATION**

1:21-cv-01741 (LDH) (PK)

**Peggy Kuo, United States Magistrate Judge:**

Union Capital, LLC ("Plaintiff" or "Union") brought this diversity action against Sultan Capital Group, LLC ("SCG") and Guy Sultan ("Sultan" and, together with SCG, "Defendants"), alleging breach of contract against SCG and breach of personal guaranty and fraudulent inducement against Sultan. ("Compl.," Dkt. 1; "Am. Compl.," Dkt. 62.) Union alleges that it paid $639,000.00 to SCG in connection with two purchases of medical examination gloves which were never delivered. Union now moves for summary judgment against SCG on the breach of contract claim ("Claim 1") and against Sultan on the breach of personal guaranty claim ("Claim 2"). ("Motion," Dkt. 100.) For the reasons below, I DENY the Motion against Sultan, and respectfully recommend that Union's Motion be GRANTED against SCG.[1]

**BACKGROUND**

**I.    Relevant Procedural History**

Union filed its Complaint on March 30, 2021 alleging breach of contract against SCG and

---

[1] Union and Sultan consented to my consideration of this dispositive motion. (Dkt. 94.) Therefore, I have the authority to enter a decision as to those parties. However, SCG is in default and did not consent to my jurisdiction. Accordingly, my consideration of the Motion as to SCG takes the form of a Report and Recommendation to The Honorable LaShann DeArcy Hall.

1

breach of personal guaranty against Sultan, the president of SCG. Defendants answered the Complaint on May 24, 2021. The parties engaged in limited motion practice, and Union indicated its intent to move for summary judgment.

On September 24, 2021, the attorney for Defendants moved to withdraw as counsel. (Dkt. 31.) At the hearing on the motion, the Court explained to Sultan that while he could proceed without counsel, SCG, a corporation, could not proceed in the litigation *pro se* but must be represented by an attorney. (October 12, 2021 Minute Entry.) Sultan consented to counsel's withdrawal, and the Court ordered Defendants to retain new counsel by November 12, 2021. (*Id.*)

At a status conference on November 29, 2021, no counsel appeared for Defendants, and Sultan stated that he was in the process of retaining new counsel. The Court ordered that any new counsel for Defendants must file a notice of appearance by December 6, 2021, and if no counsel appeared for SCG, Union was granted leave to request an entry of default against SCG. (November 29, 2021 Minute Entry; *see also* Dkt. 32.)

On December 3, 2021, new counsel entered a notice of appearance on behalf of Defendants. (Dkt. 34.)

On January 26, 2022, Defendants' counsel filed a motion to withdraw, indicating that he had been "discharged" by Sultan. (Dkt. 43.) At the hearing on the motion, the Court again explained to Sultan that permitting SCG to remain unrepresented as a corporation would result in its default. Sultan "confirmed that he understood the consequences of permitting Sultan Capital Group to remain unrepresented" and "stated that he does not anticipate Sultan Capital Group retaining counsel in the future because he does not have money to pay for counsel." (January 27, 2022 Minute Order.) Accordingly, the motion to withdraw as counsel was granted.

Union filed an Amended Complaint on April 21, 2022, which added a claim of fraudulent inducement against Sultan. (Am. Compl.) Although Sultan did not timely answer, he was permitted

to file an answer by July 12, 2022. (June 29, 2022 Minute Order; Answer to Am. Compl., Dkt. 76.) Sultan appeared at a status conference and stated that he did not intend to retain counsel to represent SCG. (June 29, 2022 Minute Order.) Accordingly, a certificate of default against SCG was entered. (*Id.*; Dkt. 74.)

Union and Sultan consented to my jurisdiction to consider the Motion (Dkt. 94), and this briefing followed.

On July 20, 2023, Union filed a Notice of Motion for Summary Judgment. (Motion.) In support of the Motion, Union also filed a Rule 56.1 Statement ("Union 56.1," Dkt. 98), the Declaration of Chaim Vail ("Vail Decl.," Dkt. 97) and supporting exhibits, and a Memorandum of Law. ("Pl. Mem.," Dkt. 99.)

On July 28, 2023, Sultan filed a Response to Union's 56.1 Statement ("Sultan Response 56.1," Dkt. 102) and a declaration in opposition to the Motion. ("Sultan Decl.")

On August 4, 2023, Union filed a Reply Memorandum in Support of the Motion ("Pl. Reply," Dkt. 103.)[2]

## II.  Factual Background

The following facts are taken from Union 56.1, Sultan Response 56.1, and documents filed in support of those Rule 56.1 Statements. Except where otherwise noted, there is no genuine dispute as to the facts stated. Where there is a dispute, the parties' respective positions in their Rule 56.1

---

[2] Union did not file, in support of its motion papers, the required notice to *pro se* litigants under Local Civil Rule 56.2. The local rule requires any represented party moving for summary judgment against a *pro se* party to serve a special notice upon the *pro se* party describing the requirements of Fed. R. Civ. P. 56 and Local Civ. R. 56.1. Failure to provide this notice is ordinarily a ground for remand. *Gilani v. Teneo, Inc.*, No. 22-CV-169, 2022 WL 17817895, at *2 (2d Cir. Dec. 20, 2022). Notwithstanding Union's failure to file the notice, I find its motion may proceed because Sultan has "demonstrated that he understood the nature and consequences of summary judgment" by filing a response to Union's 56.1 Statement. *See id.* (waiving notice requirement when *pro se* plaintiff submitted appropriate opposition papers). Furthermore, I discussed the consequences of summary judgment with Sultan at the July 14, 2023 pre-motion conference. (*See* July 18, 2023 Minute Order; July 14, 2023 Transcript, Dkt. 95.)

3

statements are noted.

## A. *December 2020 Contract*

In an invoice and letter dated December 22, 2020 (together, the "December 2020 Contract"), Union agreed to purchase 3,000 Skymed nitrile examination gloves from SCG for $319,500.00. (Union 56.1 ¶¶ 1, 5.) SCG issued Invoice 1078 to Union, indicating the type, color, size, quantity and price of gloves being purchased, and that payment was to be made to SCG. ("December 2020 Invoice," Ex. B to Vail Decl., Dkt. 97-2.) In the letter from SCG to Union ("December 2020 Letter," Ex. A to Vail Decl., Dkt. 97-1), the parties agreed on the manner and timing of shipment. (*Id.* at 1.) The letter stated that shipment would leave the port 3 to 5 business days from receipt of wire, *i.e.* payment, and would not exceed 40 days' transit to SCG's facility in New Jersey. (*Id.*) The letter also included a penalty for late shipment and a seven-day time period for Union as the buyer to "inspect the product," after which SCG "is no longer accountable for any issues, and the produce will no longer be refundable." (*Id.*) The letter further states,

> Sultan Capital Group, LLC and Guy Sultan will take full responsibility for delivery and funds paid for this transaction, should any of the following issues occur:
>
> 1. DAMAGED GLOVES
> 2. WATER DAMAGE GLOVES
> 3. DAMAGED BOXES
> 4. QUALITY NOT AS DESCRIBED
> 5. NON-BLUE COLOR GLOVES
> 6. NON-MEDICAL GLOVES
> 7. MUST BE 4MM THICK GLOVES
> 8. BOXES SHOULD HAVE 100 GLOVES PER BOX

Immediately below this list are signature lines containing signatures for "Guy Sultan, President, Sultan Capital Group, LLC" and "Chaim A Vail, Union Capital, LLC." (*Id.*)

Pursuant to this agreement, Union remitted the full payment amount of $319,500.00 to SCG on December 23, 2020. (Ex. C to Vail Decl., Dkt. 97-3.)

### B. *January 2021 Contract*

On January 15, 2021, Union agreed to purchase an additional 3,000 gloves from SCG for $319,500.00. Invoice 1087 was issued for this purchase. ("January 2021 Invoice," Ex. E to Vail Decl., Dkt. 97-5.) A letter in connection with the January 2021 Invoice contained the same information as the December 2020 Letter ("January 2021 Letter" and, together with the January 2021 Invoice, "January 2021 Contract," Ex. D to Vail Decl., Dkt. 97-4).

Union remitted full payment of $319,500.00 to SCG in two installments on January 15, 2021 and January 19, 2021. (Ex. F to Vail Decl., Dkt. 97-6; Ex. G to Vail Decl., Dkt. 97-7.)

Union did not receive any gloves. (Union 56.1 ¶ 26.)

On or about March 25, 2021, Union contacted Sultan by telephone to demand a full refund of the money it had paid. (*Id.* ¶ 27.)

Following that conversation, Union and Sultan exchanged electronic text messages (*Id.* ¶ 28; Sultan Response 56.1 ¶ 28), in which Union stated, "As discussed on the phone, please confirm you're taking personal liability to return our money. Thanks!" and Sultan responded, "Yes I am . As I advised you". (*See* "March 2021 Communication," Ex. H to Vail Decl., Dkt. 97-8.)

Union's payments were never refunded. (Union 56.1 ¶ 25.)

The parties do not dispute that Union entered into two contracts with SCG pursuant to which Union would pay $639,000.00 to SCG, in return for which SCG would ship 6,000 medical gloves to Union; that Union timely paid $639,000.00 to SCG; and that Union never received any gloves or refund from SCG. The parties only dispute whether Sultan is personally liable to Union for damages.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 governs motions for summary judgment and provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "dispute about a material fact is 'genuine' … if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

## DISCUSSION

Union moves for summary judgment on Claim 1 for breach of contract against SCG and Claim 2 for breach of guaranty against Sultan.

### I. SCG's Liability for Breach of Contract

SCG has not appeared through counsel since January 27, 2022, when its second lawyer was permitted to withdraw, without objection. Therefore, it is in default in this matter and has not opposed Union's motion.

Even when a motion for summary judgment is unopposed, however, the court may not simply grant it but still must "assess whether the defendant[] ha[s] met their burden to demonstrate that summary judgment was appropriate." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 245 (2d Cir. 2004). "Although the failure to respond may allow the district court to accept the movant's factual assertions as true, *see* Local Civ. R. 56.2, the moving party must still establish that the undisputed facts entitle him to 'a judgment as a matter of law.'" *Id.* (citing *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). Therefore, I assess SCG's liability for breach of contract under the usual

6

standard for assessing summary judgment.[3]

In order to prevail on a breach of contract claim, a plaintiff must prove (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages. *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.*, 375 F.3d 168, 177 (2d Cir. 2004). "Under New York law, a contract is formed when there is offer and acceptance, consideration, mutual assent, and an intent to be bound." *McFadden v. Clarkeson Research Group, Inc.*, No. 09-CV-0112 (LDW), 2010 WL 2076001, at *4 (E.D.N.Y. May 18, 2010).

The parties do not dispute that Union and SCG entered into two valid and binding contracts—the December 2020 Contract and January 2021 Contract (together, the "Contracts"). It is further undisputed that Union paid its full obligation under the Contracts of $639,000.00, but the promised products were never delivered, and SCG never returned any portion of Union's payment, resulting in damages to Union of $639,000.00.

Although Sultan claims that the reason SCG was prevented from delivering the gloves was because SCG was defrauded by its vendors (*see* Sultan Response 56.1 ¶ 21), these extraneous circumstances do not negate the fact that SCG failed to perform its contractual obligations.

Accordingly, I find that there is no genuine dispute as to any material fact regarding SCG's liability for breach of contract. I, therefore, grant summary judgment in favor of Union in the amount of $639,000.00.

### *Prejudgment Interest*

Union seeks prejudgment interest on its damages. (Pl. Mem. at 13.) New York law entitles a prevailing party in a breach of contract action to prejudgment interest from the date of the breach until the date of the judgment at a rate of 9% annually. N.Y.C.P.L.R. §§ 5001, 5004; *Am. Empire*

---

[3] I do not have concerns about whether SCG, as a defaulting party, was given proper notice and opportunity to be heard on the Motion, as it had previously appeared through counsel, and Sultan, as its president, has been involved in every phase of this litigation.

*Surplus Lines Ins. Co. v. Empire Control Abatement, Inc.*, No. 21-CV-953 (GRB)(JMW), 2023 WL 5831080, at *5 (E.D.N.Y. Aug. 30, 2023).

Union seeks pre-judgment interest on its damages of $319,500.00 under the December 2020 Contract from February 5, 2021. (Pl. Mem. at 13.) Union remitted full payment on December 23, 2020. (December 2020 Invoice.) The December 2020 Letter provides that shipment should leave the port 3 to 5 business days from receipt of wire, and shipment "should not exceed 40 days transit." February 9, 2021 is the date that is 5 business days and 40 calendar days from December 23, 2020. The daily interest rate on $319,500.00 is $78.78. Therefore, I recommend awarding Union pre-judgment interest of $78.78 from February 9, 2021 through the date of judgment.

Union seeks pre-judgment interest on its damages of $319,500.00 under the January 2021 Contract from March 5, 2021. (Pl. Mem. at 14.) The January 2021 Invoice states the shipment date as January 20, 2021, and the January 2021 Letter provides that shipment "should not exceed 40 days transit." March 1, 2021 is the date that is 40 calendar days from January 20, 2021. Therefore, I recommend awarding Union pre-judgment interest of $78.78 on $319,500.00 from March 1, 2021 through the date of judgment.

Accordingly, I recommend awarding pre-judgment interest of $78.78 based on $319,500.00 from February 9, 2021 through February 28, 2021, and $157.56 based on $639,000.00 from March 1, 2021 through the date of judgment.

## II.  Sultan's Liability for Breach of Guaranty

Union contends that Sultan personally guaranteed the Contracts and is, therefore, jointly and severally liable with SCG for damages owed by SCG to Union for its breach of the Contracts. (Pl. Mem. at 11.)

For a plaintiff to establish a *prima facie* case that it is entitled to recover on a guarantee under New York law, it must show: (1) that it is owed a debt from a third party; (2) that the defendant made

a guarantee of payment of the debt; and (3) that the debt has not been paid by either the original debtor or the guarantor. *Chemical Bank v. Haseotes*, 13 F.3d 569, 573 (2d Cir. 1994); *see also Myers Indus., Inc. v. Schoeller Arca Sys., Inc.*, 171 F. Supp. 3d 107, 121 (S.D.N.Y. 2016) (requiring plaintiff to establish an "absolute and unconditional guaranty") (citing *City of N.Y. v. Clarose Cinema Corp.*, 681 N.Y.S.2d 251, 253 (N.Y. App. Div. 1998)).

It is undisputed that Union is owed debt from SCG, and that the debt has not been paid by either SCG or Sultan. Sultan, however, disputes that he ever made a guarantee of payment of the debt.

Union points to three pieces of evidence to show Sultan's personal guaranty: first, the Contracts themselves, which both include a provision that "Sultan Capital Group, LLC and Guy Sultan will take full responsibility for delivery and funds paid for this transaction…" (*see* December 2020 Letter at 1; January 2021 Letter at 1); second, the March 2021 phone conversation and text message exchange between Union and Sultan in which Union asked Sultan to "please confirm you're taking personal liability to return our money," and Sultan responded, "Yes I am . As I advised you" (*see* March 2021 Communication); and third, Sultan's deposition testimony in which he stated he would "personally take responsibility for the funds paid" and "take personal responsibility to pay back the money" after Union threatened legal action. (*See* Ex. K to Vail Decl., "Sultan Deposition Tr.," 33:19, 124:10–19, 153:12, Dkt. 97-11.)

Sultan contends that his statements in the March 2021 Communication and at his deposition were made on behalf of SCG and not himself as an individual. (Sultan Response 56.1 ¶¶ 28, 31.)

"Under New York law, an agent who signs an agreement on behalf of a disclosed principal will not be individually bound to the terms of the agreement 'unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal.'" *Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Legal Servs. Fund & Annuity Fund v.*

9

*Lollo*, 35 F.3d 29, 35 (2d Cir. 1994) (quoting *Lerner v. Amalgamated Clothing & Textile Workers Union*, 938 F.2d 2, 5 (2d Cir. 1991) (quoting M*encher v. Weiss*, 306 N.Y. 1, 4, 114 N.E.2d 177 (1953))). Courts weigh the five "*Lollo* factors" in determining whether "clear and explicit" evidence exists to support personal liability. *See, e.g.*, *Mason Tenders Dist. Council Welfare Fund v. Thomsen Const. Co.*, 301 F.3d 50, 53 (2d Cir. 2002) (affirming finding of no personal liability); *United Nat. Foods, Inc. v. Burgess*, 488 F. Supp. 2d 384, 387 (S.D.N.Y. 2007) (finding genuine issue of material fact as to intent); *CBI Cap. LLC v. Mullen*, No. 19-CV-5219 (AT), 2020 WL 4016018, at *4 (S.D.N.Y. July 16, 2020) (finding intent to assume personal liability but holding personal guaranty was an unenforceable illusory promise due to indefiniteness); *Body Glove IP Holdings, LP v. Exist, Inc.*, No. 1:21-CV-01181 (JLR), 2023 WL 3568955, at *1 (S.D.N.Y. May 17, 2023) (granting summary judgment and finding personal liability).

The *Lollo* factors to be considered are the length of the contract, the location of the liability provision in relation to the signature line, the presence of the signatory's name in the agreement itself, the nature of the negotiations leading to the contract, and the signatory's role in the corporation. *Lollo*, 35 F.3d at 35. In addition to the *Lollo* factors, courts look to "the structure and content of the signature lines to determine whether the party intended to sign the contract in his official capacity only." *TR 39th St. Land Corp. v. Salsa Distribution USA, LLC*, No. 11-CV-07193 (DF), 2015 WL 1499173, at *6 (S.D.N.Y. Mar. 5, 2015) (citing *Consac Indus., Inc. v. LDZ Comercio Importacao E Exportacao LTDA*, No. 01-CV-3857 (ADS)(ETB), 2002 WL 31094855, at *3 (E.D.N.Y. Aug. 29, 2002) (citing *Lerner*, 938 F.2d at 5)).

Applying these factors, I find a genuine dispute of material fact as to whether Sultan intended to personally guarantee repayment of SCG's debt under the Contracts. Many of the factors weigh in Union's favor: the December 2020 Letter and January 2021 Letter are each only two pages long, the liability provision is located in the paragraph immediately above the signature line, Sultan is explicitly named in the liability provision, and Sultan is the president of SCG. *See Burgess*, 488 F. Supp. 2d at 4

(one-page contract with personal guaranty provision immediate above signature line was "certainly no 'trap for an unwary agent'") (citing *Paribas Properties, Inc. v. Benson*, 536 N.Y.S.2d 1007, 1009 (N.Y. App. Div. 1989)); *see also Mullen*, 2020 WL 4016018, at *4 (same with respect to two-page contract). It is also undisputed that SCG, not Union, wrote the Contracts.

However, certain facts weigh against finding the "high degree of intention" required to find personal liability. *See Thomsen*, 301 F.3d at 54. The Contracts lack explicit language describing a "personal guaranty" or "personal guarantee" by Sultan. The liability provision states that Sultan will take "full responsibility" for "delivery and funds paid" should any of eight enumerated issues arise, but it does not specify what it means to take such responsibility. (*See* December 2020 Letter at 1; January 2021 Letter at 1.) It does not state, for example, that Sultan will personally guarantee repayment of the money, rather than ensure that SCG pay any refund. It does not differentiate between the responsibility that Sultan was undertaking as president of SCG and any responsibility he was accepting in his personal capacity apart from that position. This language is vague enough to at least raise a question as to Sultan's intent to personally guarantee the funds.

Finally, the Contracts are signed only once by Sultan on a signature line that states "Guy Sultan, President" with another line beneath that which reads "Sultan Capital Group, LLC." (*See* December 2020 Letter at 2; January 2021 Letter at 2.) The Second Circuit has stated that two signatures are not required to find personal liability. *Thomsen*, 301 F.3d at 54. However, "[g]iven the 'nearly universal practice' in New York that an officer assuming individual responsibility under an agreement signs twice, the presence of only one signature weighs against finding personal liability." *Jacobson v. Televida, Inc.*, No. 04CV163 (SLT) (MDG), 2005 WL 3609101, at *3 (E.D.N.Y. Aug. 10, 2005) (citing *Thomsen*, 301 F.3d at 54 ("But we think that the appearance of only one signature, especially when that signature is in Thomsen's official capacity, further supports the soundness of the district court's decision."))

Where a contract is ambiguous, the court may reference extrinsic evidence to determine the

11

parties' intent to aid with the interpretation of the contract. *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 397 (2d Cir. 2009). Union relies on Sultan's text message and deposition statements to argue that breach of personal guaranty has been established. (Pl. Mem. at 12.) In the March 2021 Communication, Union asks Sultan to "please confirm you're taking personal liability to return our money," and Sultan responds, "Yes I am". This correspondence lacks the specificity necessary to confirm an intent by Sultan to enter into a personal guaranty in the Contracts.

As for Sultan's deposition testimony, Sultan asserts that his statements were made on behalf of SCG and not on behalf of himself. (Sultan Response 56.1 ¶ 31; *see, e.g.*, Sultan Deposition Tr. 33:16-19 ("Q. Again, it's because you agreed to personally take responsibility for the funds paid for the transaction, right? A. Correct."); 124:10-13 ("Q. You did, in fact, tell them that you would take personal responsibility to pay back the money, right? A. Yes."); 153:9–12 ("Q. In other words, you're personally taking responsibility, right?" A. Correct.").) In all these statements, it is again not clear whether "personally take responsibility" means that Sultan agreed to repay Union from his personal funds, or that he would personally ensure that SCG made payment from its funds. Because of this ambiguity, I find it remains disputed whether Sultan intended to personally guarantee SCG's debt to Union.

Union further argues that Sultan asked Union to forbear on filing its lawsuit in exchange for Sultan accepting personal liability, which would constitute a new and enforceable personal guaranty. (Pl. Mem. at 12; Pl. Reply at 1.) Union claims that "Sultan further admitted at his deposition that he had agreed to personally take responsibility to pay back the money to Union…in order to get Plaintiff to forbear from taking immediate legal action." (Union 56.1 ¶ 31.) Sultan disputes this. (Sultan Response 56.1 ¶ 31.) The deposition transcript indicates that Union's counsel stated, "So you confirm to him once again, after he threatened you with legal action, that you were going to take personal responsibility to pay all the money back, correct?" to which Sultan responded, "Yes." (Sultan

12

Deposition Tr. 124:20-24.)  This testimony and the record do not unambiguously support a finding that an enforceable personal guaranty was contracted for on this basis.  It is not clear that Sultan made a personal guaranty in return for Union agreeing to forbear on filing a lawsuit against him.

On the record as a whole, I find that a genuine issue of material fact exists as to whether Sultan entered into a personal guaranty to repay the money owed by SCG to Union.  Accordingly, I deny Union's request for summary judgment against Sultan on Claim 2 of the Amended Complaint.

## CONCLUSION

For the foregoing reasons, I DENY the Motion with respect to the claim that Sultan personally guaranteed payment of SCG's debt to Union.  I also respectfully recommend that the Motion for summary judgment against SCG for breach of contract be GRANTED, and that it be ordered to pay Union $639,000.00, plus pre-judgment interest at a daily rate of $78.78 from February 9, 2021 through February 28, 2021 and of $157.56 from March 1, 2021 through the date of judgment.

Any objection to this Report and Recommendation must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any such objection waives the right to appeal the District Court's Order.  *Caidor v. Onondaga Cty.*, 517 F.3d 601, 604 (2d Cir. 2008).

SO ORDERED:

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   March 5, 2024
         Brooklyn, New York